IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

JAMES HICKS                                                    PLAINTIFF

V.                                    NO. 09-5169

MICHAEL ASTRUE,
Commissioner of Social Security Administration          DEFENDANT

## MEMORANDUM OPINION

Plaintiff, James Hicks, brings this action pursuant to 42 U.S.C. §405(g), seeking judicial

review of a decision of the Commissioner of the Social Security Administration (Commissioner)

denying his claim for Supplemental Security Income benefits (SSI) under Title XVI of the Social

Security Act (the Act).  In this judicial review, the Court must determine whether there is

substantial evidence in the administrative record to support the Commissioner's decision.  See

42 U.S.C. §405(g).

## Procedural Background

Plaintiff filed his application for SSI on January 28, 2005, alleging disability since

January 1, 2005. (Tr.12).  Plaintiff's application was denied initially and upon reconsideration.

(Tr. 25, 27-31).  Pursuant to Plaintiff's request, a hearing was held before an Administrative Law

Judge (ALJ) on February 16, 2007, where Plaintiff testified. (Tr. 20-49).  On May 22, 2007, the

ALJ entered his decision, denying Plaintiff's request for a determination of disability. (Tr. 9-21).

The ALJ found that Plaintiff had the following severe impairments: diabetes mellitus and

osteoarthritis.  (Tr. 14).  However, the ALJ  found that Plaintiff did not have an impairment or

combination of impairments that met or medically equaled one of the listed impairments, and

-1-

after careful consideration of the entire record, found that Plaintiff had the residual functional capacity (RFC) to perform medium work.[1]  (Tr. 15).  More specifically, he further found that Plaintiff could sit for a total of about 6 hours and stand and/or walk for a total of about 6 hours in an 8-hour workday, that he was able to push and/or pull within the same limits as shown for lift and/or carry, and that there were no other limitations.  Therefore, the ALJ found that Plaintiff retained the RFC to perform the exertional and non-exertional requirements of a full range of medium work on a sustained basis.  He found that Plaintiff was unable to perform any past relevant work, and applied the Medical-Vocational Rules, which supported a finding of "not disabled." (Tr. 15-20).  Plaintiff's request for review was denied by the Appeals Council on July 19, 2009, and the decision of the ALJ therefore became the final decision of the Commissioner. (Tr. 4-6).

**Evidence Presented**

Plaintiff was born in 1954 and completed three years of college.  (Tr. 84).  He supported himself for twenty years, doing lawn work.  (Tr. 350).  He lives with his friend in his friend's home.  Plaintiff's daughter lives with him as well.  (Tr. 351).

On January 1, 2000, Plaintiff was admitted to the Washington Regional Medical Center with diabetic ketoacidosis.[2]  Plaintiff was diagnosed with diabetes mellitus approximately one year prior thereto, and had been very non-compliant with his insulin therapy.  (Tr. 190).  His chief complaint was shortness of breath and vomiting for five days.  He had not been on any

---

[1]Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  20 C.F.R. §416.967(c).

[2]Ketoacidosis - acidosis accompanied by the accumulation of ketone bodies (ketosis) in the body tissues and fluids, as in diabetic acidosis and starvation acidosis.  Dorland's Illustrated Medical Dictionary 997 (31st ed. 2007).

diabetic medications, nor had he kept any diet. (Tr. 190). He reported a history of gallstones, alcoholism with pancreatic and liver damage, and had not been drinking for approximately twenty years. (Tr. 190). A chest x-ray was taken, which showed that the cardiac silhouette was not enlarged and there was no acute cardiopulmonary disease. (Tr. 257). While in the hospital, Plaintiff received education and instructions about his diabetes. (Tr. 202, 275-278). By the time of his discharge on January 7, 2000, Plaintiff reported feeling good and had no complaints. (Tr. 241).

On January 18, 2003, Plaintiff presented himself to the Washington Regional Medical center complaining of uncontrolled glucose levels. (Tr. 179). He reported having weakness and dizziness. He was advised to schedule an appointment to see the diabetic educator. (Tr. 183).

On May 22, 2003, Plaintiff went to the Northwest Arkansas Free Health Center (Free Health Center). His hearing was checked and his diabetes was found to be in good control. (Tr. 313). On April 15, 2004, he went to the Free Health Center, reporting that he had been having panic attacks for four years; could not sleep; and had irritable bowel syndrome for which he took anti-fungal enemas to help him sleep. (Tr. 308). Plaintiff was diagnosed with diabetes mellitus and onychomycosis.[3]

On April 5, 2005, a General Physical Examination was conducted by Dr. C.R. Magness. (Tr. 96-102). Dr. Magness found that although Plaintiff's hands and fingers had degenerative joint disease (DJD), he had good flexibility and range of motion otherwise. (Tr. 99). He further

---

[3]Onychomycosis - tinea unguium. Dorland's Illustrated Medical Dictionary 1342 (31st ed. 2007).

Tinea unguium - tinea involving the nails, often from spread of tinea pedis or tinea manuum, but occasionally from the infection with bacteria or other fungi such as species of *Candida*. It usually is seen first as white patches or pits on the surface or around the edges of the nails, followed by infection beneath the nail plate. Id. at 1955-56.

AO72A
(Rev. 8/82)

found that Plaintiff had the ability to hold a pen and write, touch his fingertips to his palm, grip (estimate % of normal) - 100, that he could oppose his thumb to his fingers, pick up a coin, stand and walk without assistive devices, walk on his heels and toes, and squat and arise from a squatting position. (Tr. 100). Dr. Magness diagnosed Plaintiff with: undiagnosed anxiety disorder with obsessive compulsive disorder; diabetes mellitus II with insulin management; sleep disorder - 5 years; DJD - hands and fingers; and post spleenectomy. (Tr. 102). Dr. Magness found Plaintiff to have "mild" ability to handle, hear and speak. (Tr. 102).

On April 8, 2005, a Mental Status Evaluation of Adaptive Functioning and Psychometric Evaluation was conducted by Gene Chambers, Ph.D. (Tr. 103-108). Dr. Chambers noted that Plaintiff had problems with sleep deprivation for the past five years, and that Plaintiff believed it was related to a fungal infection in his gastrointestinal system. He told Dr. Chambers that he was able to purchase some Lamisil ($1,000 for a three month supply) that he used to treat a toe-nail infection, and that it improved his sleep habits to the point that his sleep was almost normal. (Tr. 103). He stated that he was unable to continue to afford the medicine, and within thirteen days after stopping the Lamisil, he had five full days in which he did not get any sleep. He reported sleeping between two to four hours a day. (Tr. 103). Plaintiff also told Dr. Chambers that he had been having panic attacks about every six to nine months. In between those episodes, he was quite anxious most of the time. (Tr. 104). He stated that two months after he was diagnosed with diabetes, he began to have sleep difficulties. He reported that he was given an antidepressant by the Family Medical Center, but that it made him nauseous. (Tr. 104). Dr. Chambers diagnosed Plaintiff with: Axis I: Dysthymic Disorder (300.4); Axis II: None identified; Axis III: Deferred; Axis IV: Occupational limitations; and Axis V: GAF - 70. (Tr.

AO72A
(Rev. 8/82)

106).  Dr. Chambers concluded that Plaintiff's mood could improve during the next 12 month period of time if he was properly treated for his depressive symptoms.  (Tr. 106).  He found that Plaintiff had no difficulty bathing or dressing himself or driving, did his own shopping, had no problems making change and could perform all household chores.  (Tr. 107).  He further found that there were no physical problems or limitations personally observed, and that his concentration, persistence and pace were within normal limits.  He found no evidence of exaggeration or malingering.  (Tr. 107).

A Psychiatric Review Technique was conducted by Dr. Jay Rankin on April 22, 2005. (Tr. 115-129).  Dr. Rankin found that Plaintiff's impairment of Dysthymia was not severe, that Plaintiff only had mild restriction of activities of daily living, difficulties in maintaining social functioning, difficulties in maintaining concentration, persistence or pace, and no repeated episodes of decompensation, each of extended duration.  (Tr. 118, 125).

On April 25, 2005, a Physical RFC Assessment was completed by Dr. Steve Owens.  (Tr. 130-137).  Dr. Owens found that Plaintiff "meets Voc. Rule 203.22 'Not Disabled.'" (Tr. 130). Dr. Owens also found that Plaintiff could occasionally lift and/or carry 50 pounds; frequently lift and/or carry 25 pounds; stand and/or walk about 6 hours in an 8-hour workday; sit about 6 hours in an 8-hour workday; and push and/or pull in an unlimited fashion.  (Tr. 131).  He also found that no postural, manipulative, visual, communicative or environmental limitations were established.  (Tr. 132-134).  Although Plaintiff had some osteoarthritis in his hand and fingers, Dr. Owens found that he had good grip and hand function.  (Tr. 137).

On June 5, 2005, Plaintiff's attorney received a letter from Richard Back, Ph.D., Clinical Neuropsychologist.  (Tr. 109).  In the letter, Dr. Back stated that upon obtaining information

AO72A
(Rev. 8/82)

from Plaintiff at an examination, as well as from signs and symptoms observed and reported, it was his opinion that Plaintiff "met requirements for two DDSSA listings - 12.04 (Affective Disorder) and 12.08 (Personality Disorder)." (Tr. 109).  In his Mental Status and Evaluation of Adaptive Functioning report dated June 9, 2005, Dr. Back found Plaintiff's estimated IQ to be 80 or greater, and diagnosed Plaintiff with: Axis I - Panic Attacks without Agoraphobia and Dysthymia, and Axis II - Schizotypal Personality Disorder.  (Tr. 114).  Dr. Back felt that Plaintiff's condition was not expected to improve within 12 months and that there was no evidence of exaggeration or malingering. (Tr. 114).  He further found that although Plaintiff was not mentally retarded, his level of adaptive functioning was markedly impaired.  (Tr. 114).

The record contains a letter from Dr. Mark Olsen, dated November 9, 2005, written to "To Whom It May Concern." (Tr. 140).  In the letter, Dr. Olsen stated that Plaintiff had diabetes type 1, chronic insomnia, and chronic intestinal problems, and that his diabetes was under poor control.  He suggested that Plaintiff have lab tests, diabetic and dietetic teaching and tests to investigate his bowel function. (Tr. 140).  Plaintiff's diabetes was found to be under poor control again on February 9, 2006, at his visit to the Free Health Center.  (Tr. 151).

On March 21, 2006, Plaintiff appeared at the Free Health Center, and he was very concerned with his GI problem, was agitated and anxious.  (Tr. 150).  He stated that when he took Lamicil, his GI problems improved and he was able to sleep like a baby.  (Tr. 150). Plaintiff was started on Prozac.  (Tr. 150).

At a Diagnostic Interview at Ozark Guidance, Inc. (OGI) on March 24, 2006, Plaintiff stated that he was not sure why he was there, but was very anxious to be able to be treated for his physical difficulties and had filed for SSI Disability in order to obtain medical care. (Tr. 167-

169, 298-300). Plaintiff was diagnosed with: Axis I - Anxiety Disorder NOS with panic episodes and sleep deprivation; Axis II - diagnosis deferred; Axis III - Diabetes Mellitus, Type 1/Insulin-dependent, Irritable Bowel Syndrome, Primary Insomnia; Axis IV - problems with primary support group, economic problems, problems with access to health care; Axis V - GAF - 55. (Tr. 168-169, 299-300).

On May 15, 2006, Plaintiff was assessed by Dr. Theresa Farrow at OGI, who diagnosed Plaintiff with: Axis I - Bipolar Disorder, Type II, Mixed, Moderate, Panic Disorder without Agoraphobia, Obsessive Compulsive Disorder, Psychological Factors Affecting Physical Disorder; Axis II - Compulsive and Schizotypal Traits; Axis III - Irritable Bowel Syndrome, Insulin Dependent Diabetes; Axis IV - Problems with primary support, financial problems, occupational problems, social problems. (Tr. 163). His prescription for Prozac was increased to 40 mg daily and he was to begin Seroquel and cognitive, behavioral, supportive, systemic, and educational therapies. (Tr. 163). On June 2, 2006, Plaintiff was reported as doing a little better and the Seroquel helped him sleep a little. (Tr. 160). His bipolar, anxiety, NOS was reported as slightly better. (Tr. 160). On June 15, 2006, Plaintiff's depression, anxiety, bipolar, panic, and irritable bowel syndrome were recorded as better. (Tr. 159).

On July 6, 2006, a Psychological Evaluation was completed by Scott McCarty, Ph.D. (Tr. 141-145). At that time, Plaintiff was taking Insulin, Prozac and Seroquel. (Tr. 141). He reported that he had begun outpatient medication management and counseling at OGI and that the treatment had been quite helpful in improving his mood and making him feel better. (Tr. 142). Dr. McCarty stated that Plaintiff exhibited dramatic and impressionistic speech and also appeared quite invested in his symptoms. (Tr. 142). He said that the Prozac had greatly

-7-

improved his mood and well-being, and that off the medication, he felt "suicidally depressed and I cry all the time." (Tr. 142). No learning disorders were found to be present and his MMPI-2 validity scales revealed a profile that strongly indicated exaggeration and possible deception/malingering. (Tr. 143). The Beck Depression Inventory-Second Edition revealed Plaintiff to be in the "severe" range for depression and anxiety. However, Dr. McCarty questioned the genuineness of the severity levels of his responses, given his MMPI-2 profile that strongly indicated exaggeration and possible deception/malingering. (Tr. 143). Plaintiff denied any problems with activities of daily living. (Tr. 143). Dr. McCarty diagnosed Plaintiff with: Axis I: Dysthymic Disorder, Somatoform Disorder NOS, Malingering; Axis II - Personality Disorder NOS (Primary); Axis III - Deferred to a Physician; Axis IV - Occupational Issues; and Axis V - GAF-70. Dr. McCarty found that plaintiff's emotional issues were expected to continue to improve significantly within the next 12 months with continued compliance with outpatient counseling and medication management. Plaintiff believed his mood had improved and that he felt better since he started taking Prozac. (Tr. 145).

Dr. McCarty also completed a Medical Source Statement of Ability to Do Work-Related Activities (Mental), on July 6, 2006, and found that Plaintiff's ability to understand, remember, and carry out instructions were not affected by the impairment; that Plaintiff's ability to respond appropriately to supervision, co-workers, and work pressures in a work setting was not affected by the impairment; that there were no other capabilities affected by the impairment; and that Plaintiff could manage benefits in his own best interest. (Tr. 146-148).

On July 14, 2006, Plaintiff visited OGI and was found to be doing much better. (Tr. 158). Plaintiff felt the Lamisil was really helping - he had less bowel problems, was calmer, and

-8-

was sleeping much better.  (Tr. 158).

On September 7, 2006, Plaintiff saw Dr. Edwin C. Jones at OGI, and Dr. Jones found that Plaintiff was doing better, and was taking Prozac 20 mg twice a day.  Dr. Jones stated that Plaintiff was taking Lamicil from the free clinic, which helped him with sleep.  (Tr. 157).  On November 8, 2007, when Plaintiff again saw Dr. Jones at OGI, he was reported as "sleeping all the time."  (Tr. 325).  Dr. Jones diagnosed Plaintiff with:  Axis I: Bipolar Disorder; Panic with Agoraphobia;  rule out obsessive compulsive disorder.  (Tr. 320).

On January 31, 2007, Dr. Jones prepared a Medical Assessment of Ability to do Work-Related Activities (Mental).  (Tr. 93-95, 335-337, 339-341).  Dr. Jones found Plaintiff had "Poor/None" ability to follow work rules, relate to co-workers, deal with the public, use judgment, interact with supervisor(s), deal with work stresses, function independently, or maintain attention concentration.  (Tr. 93-94).  He found Plaintiff to have Bipolar Disorder and Panic with Agoraphobia.  (Tr. 94).  He also found Plaintiff had "Poor/None" ability to understand, remember and carry out complex job instructions, understand, remember and carry out detailed, but not complex, job instructions, and understand, remember and carry out simple job instructions.  (Tr. 94).  Dr. Jones stated that Plaintiff suffered from sleep deprivation and in a work situation around a lot of people, he would start to panic.  (Tr. 94).  Although Dr. Jones found Plaintiff had a good ability to maintain his personal appearance, he found that Plaintiff had "Poor/None" ability to behave in an emotionally stable manner, relate predictably in social situations, or demonstrate reliability.  (Tr. 95).   With Plaintiff's bi-polar disorder, Dr. Jones found that Plaintiff had severe mood swings.  (Tr. 95).

At the hearing held on February 16, 2007, Plaintiff testified that his sleep deprivation and

-9-

panic attacks were what prompted him to file for disability. (Tr. 350). He stated that he did not know for sure what was causing the sleep deprivation, but read a book about intestinal infections, and that the Lamisil seemed to work. He stated that the Free Health Center prescribed another prescription for Lamisil and it allowed him to sleep for several months. (Tr. 352). Plaintiff further testified that his panic attacks affected him very deeply, and that he was given Prozac and Abilify by Dr. Jones. (Tr. 354, 358). He stated that the panic attacks had been going on since he started going to OGI, and that if he took Prozac, it acted a bit like a painkiller, but he still twitched and his muscles still jumped. (Tr. 2359). Plaintiff said that he took insulin three times a day and received the insulin free from the Free Health Center. (Tr. 359).

Plaintiff stated that his sleeplessness began when he started taking insulin. (Tr. 360). He stated that he thought that he may have something wrong in his intestines, and that he had asked the free clinic if they could test for problems with his intestines and "she just said no." (Tr. 361). He did receive a prescription for Lamisil, however, and then his sleep improved. He testified that he got maybe four hours of sleep a night and sometimes fell back to sleep during the day, and that he felt like he was slipping back to the situation he was in, having more nightmares. (Tr. 362). Plaintiff stated that his lack of sleep resulted in him losing track of time, forgetting what day it was, and missing appointments. (Tr. 362). He stated that he had difficulty being around people and felt like he was going to have a panic attack. (Tr. 363). Plaintiff stated that the main thing that was keeping him from being employed was his sleep deprivation. (Tr. 364).

On April 26, 2007, a letter was sent to Dr. Jones from the Social Security Administration, asking Dr. Jones to answer a series of questions. (Tr. 91-92). This was sent in response to the ALJ's receipt of Dr. Jones Medical Assessment of Ability to do Work-Related Activities

-10-

(Mental) dated January 31, 2007. No response to the questions appears in the record, so the Court can only assume that Dr. Jones chose not to respond.

**Applicable Law**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§423(d)(3),

AO72A
(Rev. 8/82)

1382(3)(D).  A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing his claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given his age, education, and experience.  See 20 C.F.R. §416.920.  Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his residual functional capacity (RFC).  See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982);  20 C.F.R. §416.920.

**Discussion**

**Impairments**

The Court recognizes that it is the Plaintiff's burden to establish that his impairment or combination of impairments are severe.  Kirby v. Astrue, 500 F.3d 705, 707 (8th Cir. 2007).  However, this standard has been held to be a "de minimis standard."   Hudson v. Bowen, 870 F.2d 1392, 1395 (8th Cir. 1989).  The OGI treating physicians, Dr. Edwin C. Jones and Dr. Theresa Farrow, diagnosed Plaintiff with Bipolar Disorder, Panic Disorder without Agoraphobia, Obsessive Compulsive Disorder, and Psychological Factors Affecting Physical Disorder.  Although those doctors recognized that his impairments were improving, they nevertheless found that he still had some anxiety and depression, and obsessive compulsive disorder was not

-12-

definitively ruled out.  Furthermore, Dr. Richard Back, a clinical neuropsychologist, after examining the Plaintiff at Plaintiff's request, found that Plaintiff met the requirements for two DDSSA listings, 12.04 (Affective Disorder) and 12.08 (Personality Disorder).

The ALJ discounted the opinion of Dr. Jones of OGI, who found that Plaintiff had "Poor/None" ability to follow work rules, relate to co-workers, deal with the public, use judgment, interact with supervisors, deal with work stresses, function independently, maintain attention and concentration, and understand, remember, and carry out simple, detailed but not complex job instructions.  The ALJ found this assessment was "inconsistent with the overall evidence of record," specifically inconsistent with records from OGI, which stated that Plaintiff's anxiety and depression were treated and controlled with therapy and medication.  A review of the relevant OGI records indicates that medication and therapy were helping the Plaintiff, but did not necessarily "control" the anxiety and depression.  In fact, Dr. Jones stated that Plaintiff "still has some anxiety and depression, but states symptoms tend to come and go."  This statement was made prior to the date Dr. Jones prepared the Medical Assessment Ability to do Work-Related Activities (Mental), wherein he found Plaintiff unable to do many things.  The ALJ also found that Dr. Jones noted that he had not seen Plaintiff very often, but only on a "limited basis," and that Dr. Jones' conclusions could not be accurate if Plaintiff was able to run a lawn care business while he was seeing him.  He concluded: "It appears that the claimant only went to Ozark Guidance Center because his attorney sent him," and that Plaintiff was not sure why he was there, except that his SSI Disability attorney sent him.

The ALJ also discounted the opinion of Dr. Richard Back, emphasizing that Plaintiff underwent the examination "not in an attempt to seek treatment for symptoms, but rather,

-13-

through attorney referral and in connection with an effort to generate evidence for the current appeal.  Further, the doctor was presumably paid for the report."  Although the ALJ found that such evidence was "certainly legitimate and deserves due consideration, the context in which it was produced cannot be entirely ignored."

The ALJ gave probative weight to Dr. Scott McCarty's opinion, who found that Plaintiff had no limitations with regard to the ability to perform work activities.  Dr. McCarty examined Plaintiff on one occasion, and because Plaintiff's MMPI-2 validity scales revealed a profile that strongly indicated exaggeration and possible deception/malingering, Dr. McCarty questioned the genuineness of the result of the Beck Depression Inventory-Second Edition test, which indicated that Plaintiff was in the "severe" range for depression and anxiety.

The Court does not believe that the fact that Dr. Richard Back examined Plaintiff at Plaintiff's request should negatively influence the ALJ's decision, and the comment made by the ALJ that Dr. Back's opinion was less than credible because the doctor "was presumably paid for the report" casts aspersions on the integrity of Dr. Back as well as Plaintiff's attorney.  The Court also presumes that the Commissioner paid the consultative examining physicians for the reports generated at his request as well.

 The Court recognizes that Dr. Jones failed to respond to the questions posed to him in a letter from the SSA.  However, the Court notes that Dr. Theresa Farrow also treated Plaintiff at OGI, and the Court thereby finds it appropriate to direct the ALJ to ask Dr. Farrow to complete a Medical Assessment of Ability to do Work-Related Activities (Mental).

The Court also notes that Plaintiff complained over a period of several years that he was sleep deprived.  Although this condition seemed to improve when he took Lamisil, he testified

-14-

at the hearing that he was getting maybe four hours of sleep and sometimes fell back to sleep during the day.  He felt he was slipping back to the situation he was in, which was to have more nightmares, and sleeping less.  When the limitations and restrictions imposed by an individual's impairment and related symptoms affect only his or her ability to meet the demands of a job other than the strength demands, the SSA considers that the individual has only nonexertional limitations or restrictions.  20 C.F.R. §404.1569a(c).  In the present case, Plaintiff testified that when he had lack of sleep, he lost track of time, forgot what day it is, missed appointments, and that it was very difficult for him to maintain a schedule.  The Court believes that upon remand, the ALJ should address Plaintiff's non-exertional impairment of sleep deprivation, and have him undergo any necessary tests, including an examination by a neurologist, who can evaluate Plaintiff's sleep deprivation issues, the impact on Plaintiff's ability to perform work-related activities, and whether Lamisil is an appropriate medication for his sleep deprivation.

Finally, the Court notes that Plaintiff continued to complain about intestinal issues and that Dr. Olsen suggested that Plaintiff have tests done to investigate his bowel function.  Upon remand, the ALJ should have Plaintiff undergo any necessary tests to determine whether Plaintiff does, in fact, have any severe intestinal and/or bowel issues.

### Conclusion

Based upon the evidence of record, the Court finds it necessary to remand this matter to Defendant, with instructions to:  obtain another Medical Assessment of Ability to do Work-Related Activities (Mental) from Dr. Theresa Farrow;  to have Plaintiff undergo any necessary tests as well as an examination by a neurologist to address Plaintiff's sleep deprivation issues; and to have Plaintiff undergo any necessary tests to determine whether Plaintiff has any severe

-15-

intestinal and/or bowel issues.  Once received, the ALJ should reevaluate Plaintiff's impairments in light of the new information, and thereafter proceed with the appropriate sequential evaluation.

Based upon the foregoing, the undersigned reverses the decision of the ALJ and remands this case to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. §405(g).

IT IS SO ORDERED this 2nd day of July, 2010.


/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)